## B. S. ROBERTS AND VINCENT G. ROBERTS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5344.    Promulgated August 27, 1927.

*G. D. Hunt, Esq.*, and *Lloyd B. Smith, C. P. A.*, for petitioners.
*S. S. Faulkner, Esq.*, for the respondent.

The taxes in controversy arise from the determination of deficiencies in income taxes for 1920 in the amount of $1,483.44 for each of the petitioners. The petitioners assign the following errors:

The Commissioner of Internal Revenue erred in his finding that any profit resulted to the the taxpayers in the year 1920 from an exchange of real estate because—

(a) In the exchange so made the taxpayer, B. S. Roberts, did not receive property having a fair market value in excess of, or even equivalent to, the property he parted with.

(b) The transaction covering the exchange of the real estate was not a closed transaction, since a portion of the property which the taxpayer, B. S. Roberts, was to receive through the exchange, to-wit, a series of promissory notes, did not come into his possession and control, but were impounded under an escrow agreement.

The Commissioner of Internal Revenue erred in his finding that the cost value of the land given in exchange by the taxpayer was $225.00 per acre instead of $250.00, and in his finding that the value of the land received in exchange was $220.00 per acre instead of $175.00.

The findings of fact proposed by the petitioner have been followed so far as they were sustained by the evidence, with such changes and additions as seem necessary. The respondent filed no proposed findings.

### FINDINGS OF FACT.

The taxpayers are husband and wife, residents of Terrell, Tex.

In December, 1918, the petitioners and one I. L. Brin purchased a tract of 1927 acres of land in Hunt County, Texas, at a cost of $385,880. The land was conveyed to the said Brin alone, but by a declaration of trust made by him he recognized that he held the legal title to an undivided one-half interest therein in trust for the taxpayer, B. S. Roberts. Of the consideration of $385,880, the amount of $32,230 was paid in cash by Brin, a preexisting vendor's first lien of $35,000 upon the land was assumed by him, and purchase money notes of $318,650, secured by a vendor's second lien, were executed by him.

On January 1, 1920, Brin and the petitioner, B. S. Roberts, exchanged 814½ acres out of 1,527 acres remaining of the 1,927-acre tract, 400 acres thereof having previously been sold to one C. M. Orr, with one J. L. Kelley for 379½ acres of land owned by Kelley in Rockwall County, Texas, and a series of 10 promissory notes, executed by Kelley to Brin, secured by a vendor's lien on the 814½ acres. The 10 notes were as follows: the first for $5,000, due January 1, 1921; the second for $10,000, due January 1, 1922; the third for $10,000, due January 1, 1923; the fourth for $10,000, due January 1, 1924; the fifth for $12,375, due January 1, 1925; the sixth for $14,575, due January 1, 1926; the seventh for $15,000, due January 1, 1927; the eighth for $15,000, due January 1, 1928; the ninth for $25,000, due January 1, 1929; the tenth for $34,111.50, due January 1, 1930; aggregating the sum of $150,861.50.

A deed conveying the 814½ acres to Kelley was executed by Brin, and recited a consideration of $238,264.65, of which $87,403.15 was stated to be cash, and the remainder of $150,861.50 to be in notes, 10 in number, as above described, executed by Kelley to Brin. In fact

no cash was paid, $87,403.15 representing the 379½ acres in Rockwall County that were conveyed by Kelley to Brin to effectuate the exchange as made.

In the deed from Brin to Kelley conveying the 814½ acres there was no stipulation that Kelley assumed the payment of any part of the first and second vendor's liens on the 1927-acre tract of which the 814½ acres were a part, the first lien being still $35,000, but the second lien being reduced from $318,650 to $255,880 after the sale of the 400 acres to Orr. Nor were these two vendor's liens mentioned in the conveyance, which contained covenants of general warranty of title, but the land conveyed, 814½ acres, was treated as if it had been free of liens.

Upon the execution of the ten notes aggregating $150,861.50 by Kelley, they were deposited under the terms of two agreements reading as follows:

THE STATE OF TEXAS }
  COUNTY OF KAUFMAN }

This agreement is to witness a contract by and between I. L. Brin, party of the First Part and J. L. Kelley, and C. M. Orr, parties of the Second Part, WITNESSETH:

That, Whereas, the said party of the First Part purchased 1929.96 acres of land on the W. H. Hopkins Survey in Hunt County, Texas from J. R. Nichols et als. as shown by deed records of said County, and as part of consideration said Brin was to discharge a loan or mortgage for $35,000.00 held by the Union Central Life Insurance Co. against said land, and due January 1, 192—, and the said Life Insurance Co. will not agree to receive payment of said $35,000.00 which has been tendered by said Brin to them.

Now, THEREFORE, We, the said J. L. Kelley and C. M. Orr separately have agreed that it will be satisfactory with us for said Brin to place one note for $5000.00 due January 1, 1921, and three notes for $10,000.00 each, due respectively January 1, 1922, 1923, and 1924, signed by said Kelley in favor of said Brin, a vendor's lien against 814.58 acres of said Hopkins Survey deeded by said Brin to said Kelley in Greenville National Exchange Bank of Greenville, Texas, to be held by them as a guarantee that said Brin will pay off said $35,000 loan and interest thereon at maturity, and should he fail to do so said Kelley owner of said 814.58 acres and said Orr owner of 400 acres of said land heretofore conveyed to him by said Brin, acting jointly shall be allowed to collect or negotiate said notes and pay said $35,000.00 to said Bank, which money shall be used by said Bank to pay off said loan and get release of same.

And the said Orr hereby releases $8,000.00 Liberty Bonds held by said Bank and agrees herein that said Bank shall deliver said Bonds to said Brin as said Bonds were put in escrow at said Bank guaranteeing release of said loan to be secured for his said 400 acres, and the said $35,000.00 in notes signed by said Kelley are put up with said Bank guaranteeing said Kelley and said Orr separately or jointly against said $35,000.00 loan held by said Union Central Life Insurance Company.

It being specially understood that the said Orr and Kelley shall cooperate with said Brin in reloaning amounts paid by said Kelley at the same rate of interest, or more, said notes provide, and said notes secure by reloaning said amounts paid by said Kelley shall be placed in said Bank in place of said

money, to be held in same manner as remaining Kelley notes until said loan is paid by said Brin, or said Brin may put up Liberty Bonds for amount so paid by Kelley at time of payment and secure money paid by said Kelley, and upon full payment by said Brin of said $35,000.00 loan said Bank shall return all notes signed by Kelley and all money, interest or bonds accruing from same to said Brin.

And the said I. L. Brin hereby binds himself, his heirs and assigns that on the 1st day of January, A. D. 1922 he will pay said $35,000.00 loan to said Union Central Life Insurance Company, and procure and have duly recorded the release thereof; thereby permitting the delivery to him by said Bank of such notes of the said J. L. Kelley or the proceeds thereof as may then remain in the possession of said bank.

A copy of this contract in hands of said Brin, said Kelley, said Orr and said Bank, and all of said parties hereby agree to abide the above contract, and authorize said Bank to carry out same as outlined herein.

WITNESS our hands, this the 20th day of December A. D. 1919.

I. L. BRIN

*Party of First Part.*

J. L. KELLEY

C. M. ORR

*Parties of Second Part.*

We hereby acknowledge receipt of said notes, and agree to hold same in escrow as provided in above contract.

GREENVILLE NATIONAL EXCHANGE BANK

By C. B. JONES, *Vice President.*

THE STATE OF TEXAS  ⎱
  COUNTY OF KAUFMAN ⎰

This contract this day entered into by and between I. L. Brin, party of the first part, and J. L. Kelley, party of the second part, WITNESSETH:

That, Whereas, said Brin has sold and conveyed to said Kelley 814.58 acres of land, a part of the W. H. Hopkins Survey in Hunt County, Texas, as shown by recorded deed, for a consideration of $238,264.65; $87,403.15 paid in cash, or its equivalent, and ten notes aggregating $150,861.50, described in deed, and,

WHEREAS, J. H. Nichols of Austin, Texas holds notes for purchase money against said 814.58 acres and other land, and said Nichols being unwilling at this time to accept said above described notes as credit on said Brin notes and thereby releasing his lien from said 814.58 acres, occasioned by said Nichols requiring 7% interest, when said Kelley notes only bear 6%.

Now, Therefore, as a safeguard to said Kelley, and as a guarantee that a release of said Nichols lien on the said 814.58 acres will be furnished, the said I. L. Brin has placed the last six of above ten Kelley notes, aggregating $115,861.50, in the American National Bank, Terrell, Texas, to be held by them and collected in on said notes until such time as said Brin may instruct them to pay same to said Nichols as credit on his notes held by said Nichols, or until such time as said Brin may reloan said accumulated cash in such a way as will be satisfactory to said Kelley and as considered safe by said Bank, and all notes taken in said new loan shall be held by said Bank for performance of this Contract in same manner and is here instructed to turn said notes and all cash and interest from payments made by Kelley, or others, less any amounts that may have been paid to Nichols, back to said Brin at such time that he can secure release of said 814.58 acres from all liens held by said Nichols, and if for any reason said Brin shall fail to secure release from said Nichols my maturity of all of said Kelley's ten notes, the said Bank

may apply returns from said notes to payment of said Nichols notes held against said Brin, and secure said release for said Kelley, or may hold said funds until such time as said release can be secured, provided same can be loaned out by them at interest not less than 6% per annum.

It being understood that the first four of said ten Kelley notes, amounting to $35,000.00, above mentioned have been put in escrow at Greenville National Exchange Bank guaranteeing payment of a $35,000.00 loan held by Union Central Life Insurance Company against said 814.58 acres of land, and other lands, as shown by separate contract signed by I. L. Brin, J. L. Kelley and C. M. Orr.

This contract this day entered into and signed in triplicate, one copy to be held by I. L. Brin, one by J. L. Kelley, and the third one by said Bank, and we bind ourselves to carry out same.

Witness our hands at Terrell, Texas, this the 30th day of December A. D. 1919.

I. L. BRIN,
*Party of First Part.*

J. L. KELLEY,
*Party of Second Part.*

We, the undersigned, hereby acknowledge receipt of said above six notes signed by J. L. Kelley in favor of said Brin, aggregating $115,861.50 and agree to hold same in accordance with this contract.

AMERICAN NATIONAL BANK.
By W. P. ALLEN, SR., *Pres.*

I. L. Brin having transferred one-half interest in above J. L. Kelley notes to me, I hereby agree to carry out above contract with said Brin.

B. S. ROBERTS.

At the time of the trial the last three of the notes falling due in 1928, 1929, and 1930, respectively, aggregating $74,111.50, remained unpaid, and in the hands of the American National Bank of Terrell under the terms of the second of the agreements quoted above, all of the preceding notes of the series having been paid and the proceeds used to discharge the first lien of $35,000 and to partly discharge the second lien of $255,880.

The entire 1,927 acres cost Brin and the petitioners an average of $200 per acre. The 814½-acre tract, on account of the character of its soil and the fertility thereof, the smoothness of its surface, its proximity to the City of Greenville, its service from the city's utilities, has a value in excess of the remainder of the tract, which was not as desirable. Upon a proper allocation of the cost of the entire tract, the cost to Brin and the petitioners of the 814½ acres sold was $250 per acre.

The 379½ acres of land in Rockwall County which were received in exchange for the 814½ acres in Hunt County had a reasonable market value of $175 an acre at the time of the exchange. The Commissioner computed the profit realized upon the sale as follows:

| | |
|---|---|
| Sale price received for 814½ acres; 379½ acres taken in exchange at $230 per acre_____ | $87, 285. 00 |
| Less: $10 per acre trade inflation_____ | 3, 795. 00 |
| Fair market value land taken in exchange_____ | 83, 490. 00 |

Vendor's lien notes bearing 6%, as follows:

| | | |
|---|---|---|
| No. 1 1-1-21 | $5,000.00 | |
| No. 2 1-1-22 | 10,000.00 | |
| No. 3 1-1-23 | 10,000.00 | |
| No. 4 1-1-24 | 10,000.00 | |
| No. 5 1-1-25 | 12,375.00 | |
| No. 6 1-1-26 | 14,375.00 | |
| No. 7 1-1-27 | 15,000.00 | |
| No. 8 1-1-28 | 15,000.00 | |
| No. 9 1-1-29 | 25,000.00 | |
| No. 10 1-1-30 | 34,111.50 | |
| | | $150,861.50 |
| Total amount received by vendors | | 234,351.50 |

Cost December, 1918:

| | | |
|---|---|---|
| 1927 acres $200 per acre | $385,400.00 | |
| Less: Cost value of land retained: | | |
| 1112½ acres at $181.70 per acre | 202,137.50 | |
| Cost value of land sold 814½ at $225 per acre | 183,262.50 | |
| Less: Depreciation on improvements, estimated $7,500 at 4% 1 year | 300.00 | |
| (3) Adjusted cost of land sold | | 182,962.50 |
| Profit realized | | 51,389.00 |

One-half of this profit the Commissioner allocated to the petitioners, dividing such one-half equally between them.

### OPINION.

PHILLIPS: In 1919 the petitioners acquired a one-half interest in certain real estate, a portion of which was exchanged on January 1, 1920, for certain other real estate and the notes of the purchaser. The tract first acquired was 1927 acres in extent and the acreage varied greatly in value. The evidence shows that by reason of its location, freedom from creeks and gullies, and fertility, the portion sold had a greater value than the remainder. The Commissioner recognized this fact in assigning a value of $181.70 an acre to the land retained and $225 an acre to the land exchanged. All of the evidence sustains the petitioners' claim that an even greater difference in value existed. Several witnesses were produced who were acquainted with the value of such lands and after considering their testimony, we conclude that the purchase price of the entire tract must be so allocated as to assign $250 an acre to the property transferred.

The value of the property received in exchange is also in dispute. The value fixed by the deed seems to give no accurate index to the actual value, for apparently both parties to the exchange "inflated" the value for the purposes of the trade. The property received is

described as gray land, inferior in quality to the black land conveyed and not so well situated. The testimony of several witnesses familiar with values of such lands was adduced by the petitioners and upon the record we reach the conclusion that the value of the land received was $175 per acre.

The property conveyed was held in the name of Brin, in whose name all conveyances and agreements were made. Since the one-half interest of the petitioners arises through Brin, we treat his acts as those of the petitioners for the purposes of our discussion of the case.

The property was acquired subject to two mortgages. Upon the exchange a warranty deed was given, but since the vendors were unable to secure a release of the property from the lien of the mortgages, it was agreed in substance that the purchase-money notes should be deposited in two banks and the proceeds used to discharge these mortgages. We see no substantial difference between such a situation and one where the vendee assumes the mortgage. In either case the vendor may remain liable on his bond, but no additional burden is created on the property.

It is contended that the vendee's notes were third liens upon the property. While in form this is so, we find when we look at the transaction that any sums paid on the notes served to reduce the prior mortgages. Had there been occasion to foreclose on the property, any amount realized would not only have reduced the first and second mortgages, but would also either have reduced the notes by the same amount or discharged them entirely. The vendors were under obligation to discharge the first and second mortgages and it was because they could not do this that the notes, which would otherwise have been a first lien on the land, were deposited under an agreement designed to assure the discharge of these mortgages.

The mortgages are treated as part of the cost of the land. As soon as the petitioners pay this cost, these notes become first liens. In attempting to value the notes as third liens, the petitioners are in the position of claiming that the first and second mortgages are to be considered at par in determining the cost of the property to them, but that the vendee's notes, which rank in security with these mortgages because of the terms of the agreement under which they were deposited, have no fair market value. The petitioners overlook the fact that these mortgages represent a part of the cost of the property to them, which they have not yet paid. Let us test the contention of the petitioners by assuming that the entire purchase price had been paid in cash, but because a release from the mortgages could not be obtained, a part of the cash was deposited in a bank under an agreement similar to that under which the notes were deposited. Would it be contended that the cash so deposited had a value only to the

extent that it exceeded the amount of the mortgages and that therefore in computing the sales price, such cash was to be included at such reduced value, while in computing cost the mortgages were to be included at their face value? If it would be proper to consider that in such circumstances the sales price was the amount of cash in excess of the mortgages, surely those mortgages could not be considered as a part of the purchase price, payment never having been made. Either they do not enter the equation or they are to be entered on both sides.

It is urged that because of the agreement there was no delivery of the notes to the petitioners. The notes were in fact deposited by consent of the petitioners under an agreement that they be used to pay an indebtedness of the petitioners or held as security for the payment of such indebtedness. The escrow agreement was not one which affected the sale, but was collateral to it. The sale was completed; the notes were made subject to the agreement only to assure payment of liens. The maker was in no position to thereafter contend his notes had never been delivered, nor could the petitioners say the purchase price had not been paid. The situation is entirely different from one where no title passes, and the transaction is incomplete, until certain acts are performed. The difference is that which exists between notes which are executed and placed in escrow to be delivered when the terms of the escrow are performed and notes which, when delivered, are placed in escrow under a collateral agreement. Here a sale took place, title passed, and the notes were received by an agent of both parties with their consent. We have no doubt that the sale took place, that the purchase price was received by the petitioners and that the notes are to be considered in determining gain or loss.

The gain should be computed as follows:

Sales price:

| | | |
|---|---|---|
| Value of 379.5 acres at $175 per acre | | $66,412.50 |
| Notes received in lieu of securing release of property from mortgages | | 150,861.50 |
| | | 217,274.00 |
| Cost, 814.5 acres at $250 an acre | $203,501.25 | |
| Depreciation as used by Commissioner | 300.00 | |
| | | 203,201.25 |
| Gain | | 14,072.75 |

One-quarter of such gain constitutes taxable income in 1920 to each of the petitioners.

*Decision will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE and MILLIKEN.